Michael Ramm, Plaintiffs & Appellants, LLC This case is not about whether there are real apples in the Applejack cereal or whether somebody was overcharged six cents on their dial soap. Our plaintiff homeowners are prosecuting this case because it matters to them. It's about their homes. It's about the floors on their homes, for which they paid thousands of dollars of their hard-earned money. You and I could walk on bare concrete or bare wood subflooring in our living rooms, but generally we don't because that's not how we want to live with our families. We want to have something that not only can we walk on, but looks nice and adds value to our homes. That's what our plaintiffs thought. They thought they were getting a product that was not going to buckle and warp and crack within a few years. That's why they paid the thousands of dollars for this bamboo flooring. What they didn't know, but what Cali Bamboo did know, was that within the first few years, these floors would buckle and they'd warp and they'd splinter. Cali told our plaintiffs this product is good as oak. Oak doesn't do that. That was untrue. In dismissing our California Consumers Legal Remedies Act, the California legislature created the California Legal Remedies Act because the existing tort and warranty remedies were insufficient for homeowners like ours who are ripped off by a remote manufacturer. According to this court and the California state courts, conduct likely to mislead a reasonable consumer violates the CLRA, the Consumer Legal Remedies Act. We allege that here. We allege false statements of fact and For example, Cali's authorized retailers told Mr. Klein and his wife that the flooring was as good as oak. It's not. His flooring and the flooring of the other plaintiffs buckled, warped and separated, causing large cracks and gaps within the first few years, well within the warranty period, well within the promised 50 years. Counsel, so are you arguing that Lowe's people were agents of Cali? Absolutely, Your Honor. And that is what our complaint alleges. Our complaint alleges that Lowe's had to go and get permission to be an authorized dealer. And then Cali gave Lowe's the pamphlets and the other materials and the scripts. Where in the complaint do you allege that the necessary elements of agency relationship, such as that Lowe's is a fiduciary with respect to Cali? Your Honor, I'm looking. This is in the excerpts of Record 279. So this is our third amended complaint. And it's really paragraph 25 that says, and I'm just I'm going to paraphrase, Your Honor, rather than read the whole thing to the court. But it says that Cali markets and retailers, such as Lowe's Home Improvement Store, which is where our plaintiffs purchased, the retailers are defendant's agents who apply to be authorized retailers and are provided with marketing materials to use, including store displays, consumer catalogs, photos and videos. We say we're informed and believe each retailer enters into an agreement with Cali to market and sell their products and that Cali determines what marketing materials or representations the retailers must use and convey. And, of course, the court is aware. We're hearing a motion to dismiss. We've had no discovery. But for a motion to dismiss, I submit, Your Honor, that you certainly allege that Lowe's is acting on behalf of Cali, and they're certainly holding themselves out that way. So I want to talk briefly about... Counsel, why is that statement, as good as oak, not puffery? It's not the same thing as saying, as your example, that there's apples and apple jacks. That seems like a pretty subjective statement. Well, Your Honor, I've had oak floors and they don't warp and they don't gap and they don't separate within the first few years. This court, in Williams v. Gerber, this was the kids' fruit juice snacks, said, and this is in 552 F. 3rd at 941 Ft. No. 3, that nutritious, the word nutritious there, was not puffery in context because you had to look at the packaging as a 9th Circuit. Given the context of this statement, we declined to give Gerber the benefit of the doubt by dismissing the statement as puffery. Here, Your Honor, I think you have to look at all the statements and you have to look at, it's not just as good as oak, but it's harder than any wood. It's long lasting. It's durable. And in that context, Your Honor, it's not puffery. It was our client, Mr. Klein, who went in there thinking, well, I'm going to buy oak. And they said, well, this is as good as oak. And so he bought this and it wasn't as good as oak. So we allege a false statement. How do you define what is good as oak? What does that mean? I can tell you what it doesn't mean, Your Honor. It doesn't mean that it's going to separate and gap and buckle within the first few years. That's what it means in this context when you're selling flooring. And you're saying this flooring is as good as oak and it's long lasting. How have you proven that oak has never buckled before? No, Your Honor, that is a question of fact. We are here in a motion to dismiss. They can show the jury if they want that oak is going to fall to splinters in the last first few years. It's just not. But we're not here on summary judgment or a trial. We're here on a motion to dismiss, Your Honor. We have alleged that was a false statement. And the district court didn't even analyze that statement in its order. But anyway, that's the false statement. The main thing I want to talk about, if the Court please, is the duty to disclose. And I submit that under LaMandrie v. Judkins, there is a duty to disclose if the defendant has exclusive knowledge of material facts or if the defendant makes partial representations but also suppresses some material facts. And this case is cited throughout the briefs. The key is materiality. Here, Gally made partial representations. And the main one I'd like to focus in on is that the flooring had a 50-year warranty. This is exactly like the Moneer case, which, by the way, I was colleague counsel in the Moneer case, so I'm very familiar with it. And in that case, we had a statement that was really used just to mark it. Hey, there's a 50-year warranty. And then after you buy the product, of course, that's when they hit you with the fine print. But Moneer, McAdams v. Moneer, was the same thing. They say there's a 50-year warranty here, and then they don't disclose the defect. And the California Court of Appeals said that saying you've got a 50-year warranty creates a duty to disclose that there's a material problem that's going to manifest within those 50 years. So under McAdams, there's a duty to disclose. Counsel, at least one of your clients did not register the warranty, correct? And so the warranty was never valid? We're not here on warranty claims, Your Honor. Right, but the duty to disclose is changes of whether or not there's a valid warranty under California law. Isn't that correct? Well, there's a difference if the defect manifests post-warranty. And that's authority, and that's barred, and that's not us. So, yeah, that's my question. So, Cali Mambu says the warranty is 50 years, but for at least one of your clients, the warranty was zero because he didn't register. Do we then take the post-warranty omission standard, which is you have to allege a safety risk, or do we have to barden and doherty? Is the defect manifesting after the warranty period? We could fight about whether these technical details matter to a warranty claim, but we do not have a warranty claim. I will tell the Court that in McAdams v. Moneer, where we had a certified class, hardly anybody registered their warranty, even though there was a similar... So I guess my basic question is, what is the warranty period when a customer doesn't register the warranty, which is a condition of the warranty? It's still 50 years, Your Honor. That's your argument. Yes, Your Honor, because we're here on a Consumer Illegal Remedies Act claim, not a warranty claim, and they're making the affirmative statement, 50-year warranty. And under McAdams v. Moneer, that creates the duty to disclose. There was not a warranty claim in Moneer either, Your Honor. The second, and I see my time's going, so I want to say very quickly, there's also a duty to disclose because of the knowledge, the exclusive knowledge. At page 35 of our opening brief, we list by date a variety of complaints on this specific problem of which Cali was aware. And so that's a second reason for the duty to disclose, because Cali had knowledge. And beyond that, in early 2019, Cali modified its warranty to specifically exclude the very defects that we're suing over. So that was another reason why there is a duty to disclose. I'm going to stop there and reserve the rest of my time for rebuttal. I have a question for you before you do that, because you're under a 9b heightened pleading standard requirement, correct? Yes, Your Honor, and? So I just, you know, the district court noted that only 12 of the online complaints you attached your pleading plausibly predated the latest plaintiff's purchases by claim, and only two predated the earliest two purchases by Gatchall and the other plaintiff. Why are the other online complaints you filed relevant to Cali's pre-sale knowledge? First of all, Your Honor, let me say the district court was wrong. And I think the district court was focusing on the second amended complaint rather than the third. But if you look at page 35 of our opening brief, it lists a great number of complaints that predated the client purchase. And in the left column, there's a record site, and then next to it, there is a date. And then the court can see there are a great number of complaints that predated the client purchase that are similar to ours. So I don't think that the district court was accurate in that statement, Your Honor, if you look at the third amended complaint, which is what we're here on. And so I guess what case best supports your assertion there that these number of complaints that you've noted here are enough to allege knowledge? Well, this court in Williams v. Yamaha 851 F. 3rd at 1028 says, pre-discovery, when the court must take appellant's factual allegations as true, appellant's description of a separate consumer response system dedicated to handling an unusually high volume of complaints, and it goes on, supports a claim of pre-sale knowledge. So I would say Williams v. Yamaha, Your Honor. Williams ended up setting up a special, I think, a special page or something to deal with this. I mean, it seemed like it was, it may have been distinguished. So in that respect, so that's the one you're pointing to because I think they created a private internal complaint system to deal with the unusually high volume of complaints detailing specific defect in the company's outboard motors in that case. Are you saying this is similar? Yes, Your Honor. You'll see that most of the complaints are about the flooring and that Kelly was devoting substantial amount of personnel to responding to these complaints. So was it precisely the same fact pattern? No. But is it sufficient under Lemandry v. Judkins to show that Kelly had knowledge that our plaintiffs did not? Of course. If our plaintiffs had this knowledge, they wouldn't have purchased this product. Another case, and I understand it's persuasive because it's from the district court, is Judge Alsop's ruling in Falk v. General Motors where he says there were online complaints, but the average consumer is not required to know all about them when he or she goes in to purchase the product, whereas the defendant clearly does, and under Lemandry that suffices. All right. Thank you. Thank you, Your Honor. Thank you, Your Honors. Good morning. May it please the Court, my name is Phil Ollis on behalf of Cali Bamboo LLC. Contrary to what you heard a moment ago, this is a failed breach of warranty case. Plaintiffs did bring breach of warranty claims and were unable to establish in each instance that they had a valid warranty claim or had actually even submitted a valid warranty claim. And the case law is in the briefing, but there are several cases that establish that you cannot use the CLRA and UCL to expand your warranty rights, either in terms of duration or in terms of scope, which is what we're seeing here. So I'd like to respond to a few specific points that were just made. First, with respect to the as-good-as-oak alleged representation, we haven't heard a lot about that. We've had several oral arguments in the history of this case, three motions to dismiss, and an appellate briefing. You won't see very many references to as-good-as-oak. In fact, the only reference to as-good-as-oak is one plaintiff says in a product was as good as oak. In what respect, we don't know. But in any event, that's the one place that that occurs. When asked in the oral argument on the motion to dismiss the Third Amendment complaint what the central affirmative misrepresentations are, as-good-as-oak wasn't one of them. Plaintiffs' counsel pointed out durability, long-lasting, 50-year life. Well, the district court did note that misrepresentation in its order, the good-as-oak, it is in the district court's order dismissing it, the Third Amendment complaint. Well, it's mentioned in there, but it's not. He determined that the, he asked what the specific main complaints were and determined that those were puffery and that included as-good-as-oak. But what I'd like to... Well, I guess that's my question is, it didn't, the district court did not analyze as-good-as-oak as puffery. What are we to do with that? Do we have, can we do that here or do we have to kick that back? I don't think it needs to be addressed at all. It is a, and I'll tell you two reasons why. One, it relates solely to this one plaintiff. Two, it is mentioned but once in the appellate opening brief and that is just in the background. It's not identified as an affirmative misrepresentation on which plaintiff is appealing in this case. You're saying it's a waiver argument, that they waived it? Yes, it's not, it's the Rutledge case, if it's not raised in the opening brief as an argument, as an error below, then it is abandoned. So that is a, that's an issue that was not pressed below or on appeal and what, and it is part of a history of sort of the changing, shifting sands of what the alleged misrepresentations are. That's the, that's the first reason. The second reason is, to go to Judge Murgia's point, Lowe's sales representatives are not Cali Bamboo. And Judge Robinson specifically held that in dismissing the Second Amendment complaint, instructed plaintiffs, if they wanted to try to ascribe statements by Lowe's employees to Cali Bamboo, they must plead the elements of agency in their Third Amendment complaint. They attempted to do so in the Third Amendment complaint and in granting a motion to dismiss, Judge Robinson determined that they had not correctly, under Buchanan standards, had not sufficiently alleged agency. The word agent and the word agencies do not appear, agent or agency do not appear in the opening brief. So there's no appeal from that determination by Judge Robinson that agency wasn't sufficiently pled. The only place it appears is in the reply brief, and now in this discussion today, but there is no, there was no appeal from that determination. Rather, what we see is the assumption, sort of throughout the reply brief, that the Lowe's salespeople were acting as agents of Cali Bamboo. There's no argument for why that is the case. That has not been challenged on appeal. And, you know, that, that is really an end run around that issue that shouldn't be permitted. They haven't made, they haven't appealed from that, they haven't made the case. And that's true with respect to a number of other issues as well. So with respect, we do make a couple of abandonment arguments in this case, one with respect to unjust enrichment, one with respect to injunctive relief. I'd like to particularly point at unjust enrichment because there was an unjust enrichment claim that was alleged in the Second Amendment complaint, and we move to dismiss that. Can you address my question on what happens if a customer doesn't comply with the conditions of the warranty so that you have to register, at least, there's a procedural requirement that the customer has to register with the warranty, get the 50-year warranty, correct? That's correct. And at least one of the customers failed to do that. So, and it sounds like California law omissions or disclosure requirements turns on whether or not it's during the period of warranty. So if a customer voids the warranty, you know, ab initio, what is the warranty period that we look at in that situation? Well, so I think I disagree with that understanding of the law. I think that the significance of the warranty period, as you see in some of these cases like Daugherty and others, is that it is not reasonable for a consumer to believe that a product will not encounter any defects or any problems post-warranty. Right. That is not the same thing as saying that the standard is different during the warranty as opposed to post-warranty with respect to what you must allege for a fraudulent omission. My understanding of California law is that if it's an omission that affects the product outside the warranty, that you have to allege that there's a safety risk. Well, I think outside of the warranty, you'd have to allege that there's a safety risk or that there is a duty to disclose. Right. And if there's a safety risk, there is a duty to disclose. I think that's right. I mean, the case law is a little ambiguous on that, but essentially, yes, that there has to be a duty to disclose. There either has to be an affirmative misrepresentation or a duty to disclose, which could be an unreasonable safety hazard. And under some recent California case law, could be this central to the functionality of the product. Right. And I don't think that standard changes necessarily whether you're within the warranty period or without the warranty period, because I think that that issue goes to the reasonableness of the consumer's expectations. And I think one thing that's really important to remember here as you think about warranties and how those affect the standard is this is not a bumper-to-bumper warranty. This is a limited warranty. It's identified as such. It's disclosed as such. So when you're thinking about the reasonableness of consumer's expectations, it is not reasonable for consumers to expect that the product will perform flawlessly post-warranty, but nor is it reasonable for them to expect that it will perform flawlessly within warranty. It is reasonable for them to expect that the manufacturer will abide by the warranty and will take on the risk of repairing and replacing. So I just want to confirm. So if the plaintiffs don't have adequately alleged knowledge, the panel doesn't need to determine what the warranty period was or which line of those warranty type of cases apply? I think that what I'm suggesting is that the, in any event, the plaintiffs cannot establish an affirmative misrepresentation or a duty to disclose no matter which standard is applied, whether it is the safety defect or whether it is the central to functionality test. Sorry, I have trouble hearing you. What was the last thing you said? Or the central to functionality test. So where, so knowledge, don't they have to show knowledge on the part of Cali? They absolutely must, yes. So in order to show a duty to disclose, they must show materiality and knowledge. And then again, under the LaMandry factors, if, and I think I understood this to be the case, if the claim is that the LaMandry factor of exclusive knowledge applies, then they must show not just knowledge, but exclusive knowledge on And here, was knowledge, in your view, established with the complaints that were online? I wanted to find out how many complaints are necessary to establish knowledge. Well, I think it's a matter not just of the quantity of the complaints, but the subject matter of the complaints. So I'd like to go back for a moment to what we heard a moment ago. There were a whole bunch of complaints, Yelp complaints and online complaints, that were attached to or referenced in the second amended complaint. Those are the same ones in the third amended complaint. There are no new ones. And when Judge Robinson granted our motion to dismiss and said it was insufficient, they just basically repackaged the same complaints and presented them again. So I think my friend was in error when he said, when I think I heard him say something different. Having said that, if you look at the nature of the complaints, even as characterized by plaintiffs on page 35 of the third amended complaint, what you see is no identification that Cali Bamboo is even the manufacturer with respect to these complaints. And that's an issue that we raised below, that there were all these Yelp complaints, my flooring doesn't work, but no indication that it was actually a Cali Bamboo product. Which Cali Bamboo product it is, of which there are many, and the nature of the complaints ranges from this cupping, buckling, my molding came loose. There are a number of complaints about installation saying, hey, if you're going to buy this product, make sure that you get a good installer to do it. Well, that's one of the concerns. So what you see is a whole litany of different kinds of complaints. And yes, people often have complaints about a fairly expensive product that can fail for a large number of reasons. Bad installation, bad maintenance, there's a long list. So I think the problem is twofold, that it's not just a matter of quantity and timing, which is a problem for them, particularly timing, but it's also that these complaints don't gel around a single defect. It's not like, you know, my windshield wiper broke off. It's anything you could possibly complain about a hardwood floor. Judge Bumatane, did you have a question? I had another one, but go ahead. It's related to this question. So one of the other allegations for knowledge was the July 2019 warranty change. And as I understand, the district court kicked that out just simply because it was postdated the purchase of the flooring by the plaintiffs. Is that correct? Well, I think it's two things. I think that is the rationale that Judge Robinson used, that there's no way that that could establish, plausibly establish knowledge prior to the purchases at issue if it was, you know, a year later or several months later, at least from the last purchase before these changes were made. But I think it's also important to look at the substance of the warranty. Yeah, just because I think the timing argument doesn't quite work, because if, you know, I'm sure it takes some time for the company to change the warranty, and there must be reasons why they're changing the warranty, and it's not overnight. So to me, the timing argument doesn't quite make sense. Well, there was an implication earlier in this case by Plaintiff's Counsel that the warranty was changed on account of the filing of the lawsuit. So, yeah. So I'm not sure that's true. I think that you probably could change your warranty very quickly. This was certainly well after the last purchase by any plaintiff. By a couple of months, though, right? I think it's in the following year. So I think the last more than half a year. And I think the important part is that the underlying warranty addresses exclusions for moisture issues. Don't do wet mopping. You know, excessive moisture is excluded from coverage. So the substance of the warranty really isn't that different as to the alleged defect. It's longer, and there's some more detail around it, but the essential... Your argument is that even if you were to use that as a basis to construe knowledge, it doesn't show any knowledge of the defect that the company knew about defect. That's correct. That's correct. Stored displays that Cali provided to Lowe's included statements that the flooring was durable, long-lasting, and particularly hard. So I guess my question to you, are consumers just meant to ignore those statements when deciding between products? Well, I think it's the question of what's puffery and what's not. They are to, you know, take with a certain, I don't want to say grain of salt, but there's a difference between a statement that is nonspecific and non-measurable and one that is specific and measurable. And that's what puffery is all about. And we've seen that exact representation, durability, be dismissed as puffery before, even in a case very much like this one, because I think this is a copycat of that one, which is the Gold Bean Lumber Liquidators case, which there were other representations not present here that allowed that case to move forward. But the court found that durability representations in connection with bamboo flooring were puffery. And so I think that that's the difference, is that these are things that, you know, are measurable or specific. And the plaintiffs, we were talking about the warranty earlier in this discussion. The plaintiffs allege that they did not receive a copy of the warranty before at the time of purchase. And can you just talk about, I mean, were they supposed to find the warranty or how were they supposed to find the warranty and apply with its terms? Well, they allege that they did not see the warranty before the purchase. And that's the extent of that allegation. I think it kills their affirmative misrepresentation claim to the extent it's based on the allegation that there's an affirmative representation that the four won't pull apart. Well, they've conceded, they've fled themselves out of court, that they never even saw that representation before they made their purchase. So I don't think that that, I think that's where that is significant, that they, if they did not, in fact, see it, then they couldn't have relied upon it. I want to say a quick word. Judge Baker, did you have a question? I do. Thank you, Chief. I'd like you to address the central functionality issue and particularly how do we deal with that in the context of flooring? I mean, with an electronic device, right, that's pretty easy. If you turn it on, it doesn't work. That's, then you can, you know, well, it's not, the central function has failed. Flooring is a little bit more difficult. Like where, there's kind of a spectrum here. And why isn't it that if the allegations of the complaint are taken as true as they have to be, that, in fact, this flooring failed its, the central functionality of the product? Because the allegations in this complaint include that the product is being used to this day by every one of the plaintiffs. So this is, their flooring did not fail in the sense that it doesn't operate as flooring. And as counsel pointed out, they're entitled to flooring that looks good. They paid a lot of money, so, you know, they're entitled to feel like it should look good. Well, that's not central functionality. The complaints in this case, or the allegations in this case, have to do with some cosmetic issues, some disappointment in the product, and whether that disappointment is valid or not isn't really the discussion. The question is whether it goes to the centrality of the functionality of the product. And the product works as flooring, and we know that because it's still working as flooring to this day. Okay. Judge Mounte, do you have any other questions? No, thanks. Okay. Thank you. Thank you both for your presentations. Oh, I'm sorry. I need to give Mr. Ram a few more minutes. Two more minutes, Mr. Ram. Thank you very much, Your Honor. Really quickly, whether Lowe's is an agent for this case is a question of fact, which should not be resolved on a motion to dismiss. Whether Good as Oak is puffery or not, and we don't think it is in context under the Gerber case, does not matter for this case because we are on all fours with McAdams versus Monier. In that case, as here, the defendant touts the 50-year warranty. They don't give it to you. They just say there's a 50-year warranty, and that creates a duty to disclose this product's going to fall apart, not just within 50 years, but within the first few. The centrality of the function, you won't find that in the CLRA, and you won't find that in Landry versus Judkins. What they say is material. Now, in this Collins versus E-Machines case, when the court found materiality, they also said, by the way, this is central to this function of these computers. And similarly, not falling apart and not looking like heck is central to the purpose of a floor. We would not, any of us, want to sell our home with a floor that's splintering and causing splinters and falling apart. That does go to the central purpose. What would be the central purpose of a floor if not to fall apart? Stop there, unless there's a question. No, I don't think so. Thank you very much. Thank you both, Mr. Olson and Mr. Ram, for your presentations here today. I appreciate your arguments. The case of William Klein versus Kelly Bamboo is now submitted, and that is the last case we had on our docket today, and so we are adjourned. Thank you very much. All rise.
judges: MURGUIA, BUMATAY, Baker